**Kelley GRASLE, Plaintiff,**

v.

**JENNY CRAIG WEIGHT LOSS CENTRES, INC., Defendant.**

**No. 4:94CV2084 (MLM).**

United States District Court, E.D. Missouri, Eastern Division.

March 20, 1996.

---

Edward C. Kruse, Randall J. Reinker, Schaeffer and Kruse, St. Louis, MO, for Plaintiff.

James N. Foster, Jr., McMahon and Berger, St. Louis, MO, for Defendant.

### *MEMORANDUM AND ORDER*

MEDLER, United States Magistrate Judge.

This matter is before the Court on the complaint which Kelley Grasle ("Plaintiff") has filed against Jenny Craig Weight Loss Centres, Inc. ("Defendant") alleging a violation of the Missouri Service Letter Statute, Rev.Mo.Stat. § 290.140. Presently pending before the Court are: (1) Defendant's motion for partial summary judgment; (2) Defendant's motion to bifurcate; (3) Defendant's motion in limine; (4) Plaintiff's motion for summary judgment; and (5) Defendant's motion to strike Plaintiff's motion for summary

judgment. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

## I.

### *SUMMARY JUDGMENT STANDARDS*

■ Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, it is the court's obligation to view the facts in the light most favorable to the adverse party and to allow the adverse party the benefit of all reasonable inferences to be drawn from the evidence.

■ If there is no genuine issue about any material fact, summary judgment is proper because it avoids needless and costly litigation and promotes judicial efficiency. *Roberts v. Browning,* 610 F.2d 528, 531 (8th Cir.1979). The summary judgment procedure is not a "disfavored procedural shortcut." Rather, it is an "integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *City of Mt. Pleasant v. Associated Electric Cooperative, Inc.,* 838 F.2d 268, 273 (8th Cir.1988). Summary judgment is appropriate against a party who fails to make a showing sufficient to establish that there is a genuine issue for trial about an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 323–325, 106 S.Ct. at 2553.

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a

complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex,* 477 U.S. at 322–323, 106 S.Ct. at 2552.

■ The moving party bears the initial burden of demonstrating by reference to portions of pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, the absence of genuine issues of material fact. However, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. It is sufficient that the movant establish that the opponent simply cannot prove an element or elements of its claim. *Celotex,* 477 U.S. at 323–325, 106 S.Ct. at 2553.

■ The non-moving party is then required to go beyond the pleadings and by affidavits, depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex,* 477 U.S. at 323–325, 106 S.Ct. at 2553. A party opposing a properly supported motion for summary judgment cannot simply rest on allegations and denials in his pleading to get to the jury without any significant probative evidence tending to support the complaint. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

■ A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. The evidence favoring the nonmoving party must be more than "merely colorable." *Anderson,* 477 U.S. at 249–251, 106 S.Ct. at 2511. When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co.*

*v. Zenith Radio,* 475 U.S. 574, 586–588, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## II.

### *STATEMENT OF FACTS*

With the above standards in mind, the Court finds that the following facts are undisputed. In April 1990, Plaintiff was hired by Defendant and remained employed by Defendant until February 2, 1993, when she was terminated. According to Defendant, she was terminated due to poor customer service and client complaints.

On February 11, 1993, Plaintiff mailed a letter to Betsy Jacobs, her manager, and requested a service letter. The policy at Jenny Craig, both currently and at the time of Plaintiff's request for a service letter, was that such requests be referred to the Human Resource Department. However, Plaintiff's February 11th letter was never forwarded by Betsy Jacobs to Ms. Agrella, the Employee Relations Manager for Defendant.

On May 4, 1993, Plaintiff's attorney sent correspondence to Mr. Agrella and stated that he had been retained to represent Plaintiff regarding the alleged failure of Defendant to issue a service letter. He requested that Defendant issue a service letter within five days. Ms. Agrella responded on May 10, 1993 by correspondence. In her correspondence, she explained that Defendant's policy with respect to service letter requests was to provide the employee with a copy of her Personnel Action Request form. Ms. Agrella included Plaintiff's form with her May 10, 1993 correspondence. This form did indicate that there were client service problems but did not identify why Plaintiff was discharged, did not describe the nature of Plaintiff's employment with Defendant and did not set forth the duration of Plaintiff's employment with Defendant.

On June 21, 1993, Plaintiff's attorney again contacted Ms. Agrella by correspondence stating that Ms. Agrella's letter of May 10, 1993 did not comply with the Missouri Service Letter statute and again requested that Defendant issue a service letter. Ms. Agrella responded on June 29, 1993. Although the June 29th letter did identify the reason for Plaintiff's discharge, it did not describe the nature of Plaintiff's employment with Defendant and did not set forth the duration of Plaintiff's employment.

Plaintiff utilized the services of the University of Missouri at St. Louis ("UMSL") placement office. She did not apply for a job with UMSL. She stated that the Placement Office at UMSL recommended that she place a service letter in her file, although it was not a requirement. Plaintiff never applied for any of the full-time or part-time positions posted with the UMSL Placement Office.

Plaintiff states she also attempted to obtain employment through the Missouri Division of Personnel. She said that the Division of Personnel recommended that she place a copy of a service letter on file with them for use by other agencies. Plaintiff had two interviews with one of these agencies. During the second interview, the agency asked her for a copy of a service letter. Plaintiff was not able to provide a letter. She did not get the job. She was not told that her lack of a service letter precluded her employment with that agency.

The only private sector employer that asked Plaintiff for a service letter was Circuit City. Although Plaintiff failed to provide Circuit City with a copy of a service letter from Defendant, Plaintiff was nonetheless hired by Circuit City.

## III.

### *PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT*

Plaintiff contends that she is entitled to summary judgment on the issue of whether Defendant violated the Missouri Service Letter Statute. The Missouri Service Letter Statute provides that when an employee of a corporation is dismissed or quits, he is entitled to a service letter if he was employed more than ninety days and makes a written request for it. The letter must set forth the nature and character or the service rendered by the employee to the corporation and the duration of the employment. The letter

must also truly state for what cause the employee has been terminated.[1]

If an employee meets the statutory prerequisites to be entitled to a service letter, he has a cause of action if the corporation fails to issue the letter or issues a letter not conforming to all the statutory requirements. *Labrier v. Anheuser Ford, Inc.*, 621 S.W.2d 51 (Mo. banc 1981); *Bartareau v. Executive Business Products, Inc.*, 846 S.W.2d 248, 249 (Mo.App.1993); *Hills v. McComas Rentals, Inc.*, 779 S.W.2d 297, 299 (Mo.App.1989). The failure to give a proper service letter constitutes an invasion of the employee's legal rights and without proof of any damages whatsoever entitles the employee to a judgment for nominal damages. *Herberholt v. dePaul Community Health Center*, 625 S.W.2d 617, 622 (Mo. banc 1981).

The following facts are undisputed by either party: (1) Defendant employs seven or more employees; (2) Plaintiff was employed by Defendant for more than a period of ninety days; (3) Plaintiff was discharged; (4) within a matter of days of her discharge, and certainly no later than one year following the date Plaintiff was discharged, she requested a service letter in writing; (5) the request was sent by certified mail; (6) the request was sent to Plaintiff's manager; and (7) the request made specific reference to the statute. Clearly, these facts cannot be disputed and establish that Plaintiff came within the statutory requirements of the Missouri Service Letter Statute.

Further, the following facts are also undisputed: (1) Plaintiff did not receive a service letter from Defendant within forty-five days of the receipt of the request; (2) when Defendant did respond to Plaintiff's request on May 10, 1993, the Personnel Action Report form did not set forth the reason for Plaintiff's discharge, it did not describe the nature of Plaintiff's employment and it did not identify the duration of Plaintiff's employment as required by the Missouri statute; and (3) when Defendant responded a second time to Plaintiff's request, Defendant's response did not comply with the Missouri statute because it did not set forth a description of Plaintiff's position and it did not set forth the duration of Plaintiff's employment with Defendant. As such, the undisputed facts establish that Defendant has violated the Missouri Service Law Statute. Thus, Plaintiff should be entitled, at a minimum, to an award of nominal damages.

Defendant raises several arguments which obfuscate Defendant's clear violation of the Missouri Service Letter statute. For example, Defendant states that although Plaintiff had prior dealings with Ms. Agrella, the person who ultimately handled Plaintiff's service letter request, Plaintiff nonetheless sent her February 11, 1993 service letter request to Betsy Jacobs, her manager. Despite Defendant's argument, the Missouri Service Letter Statute requires an employee to send the request to a superintendent or manager. Ms. Agrella was neither. Plaintiff complied with the law by sending her request to Betsy Jacobs as required.

---

1. The Missouri Service Letter Statute provides:

Whenever any employee of any corporation doing business in this state and which employs seven or more employees, who shall have been in the service of said corporation for a period of at least ninety days, shall be discharged or voluntarily quit the service of such corporation and who thereafter within a reasonable period of time, but not later than one year following the date the employee was discharged or voluntarily quit, requests in writing by certified mail to the superintendent, manager or registered agent of said corporation, with specific reference to the statute, it shall be the duty of the superintendent or manager of said corporation to issue to such employee, within forty-five days of the receipt of such request, a letter, duly signed by such superintendent or manag-

er, setting forth the nature and character of service rendered by such employee to such corporation and the duration thereof, and truly stating for what cause, if any such employee was discharged or voluntarily quit such service.

Mo.Rev.Stat. § 290.140.1. The statute further provides that:

[a]ny corporation which violates the provisions of subsection 1 of this section shall be liable for compensatory but not punitive damages but in the event that the evidence establishes that the employer did not issue the requested letter, said employer may be liable for nominal and punitive damages; but no award of punitive damages under this section shall be based upon the content of any such letter.

Mo.Rev.Stat. § 290.140.2.

Second, Defendant contends that Plaintiff's May 4, 1993 and June 21, 1993 letters requesting a service letter were sent by Plaintiff's attorney. Defendant correctly argues that an employer has no legal obligation to respond to a service letter request sent by an attorney. *Zeman v. V.F. Factory Outlet, Inc.,* 911 F.2d 107, 108 (8th Cir.1990). Thus, Defendant appears to be arguing that Defendant had no obligation to provide a service letter to Plaintiff as a result. Defendant's argument completely ignores that fact that it had a legal obligation to respond to Plaintiff's original February 11, 1993 request which was sent by Plaintiff herself. The mere fact that Plaintiff's attorney followed-up on Plaintiff's first letter does not render that initial obligation void.

Third, Defendant argues that after Plaintiff received Defendant's June 29, 1993 "service letter," Plaintiff made no attempt to inform Ms. Agrella that she felt that the content of the June 29, 1993 letter was inaccurate, incorrect or incomplete. The failure of Plaintiff to object for a third time to Defendant's non-compliance with the Missouri Service Letter Statute, however, cannot possibly be construed as suggesting that Defendant complied with the statute. The statute is very simple to understand. It requires Defendant to explain why it fired Plaintiff, describe what job Plaintiff performed and identify the duration of Plaintiff's employment. Neither the June 29, 1993 letter nor Defendant's earlier provision of the Personnel Action Report form complied with the simple mandate of the statute. The fact that Plaintiff did not object to the non-compliance does not alter that fact.

Defendant has legitimately raised the argument that Plaintiff's motion for summary judgment was not timely filed and, therefore, should be stricken. Alternatively, Defendant requests that, in the event the Court grants leave for Plaintiff to file the motion for summary judgment out of time, the Court grant Defendant time in which to file a full and complete response thereto. Although the Court is of the firm conviction that Defendant can offer no evidence which would create a genuine issue of material fact with respect to whether Defendant violated the Missouri Service Letter Statute, the Court will grant Defendant's request. Thus, the Court will grant Plaintiff leave to file the motion out of time and will also grant Defendant an additional twenty days in which to respond to Plaintiff's motion for summary judgment. Defendant's motion to strike, however, will be denied.

## IV.

### *DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT*

Assuming for purposes of the instant motion that Plaintiff has established a service letter statutory violation, then the law is clear that Plaintiff is entitled at a minimum to a judgment for nominal damages. *Herberholt v. dePaul Community Health Center,* 625 S.W.2d 617, 622 (Mo. banc 1981). Defendant moves for summary judgment, however, not on the issue of whether Plaintiff is entitled to a judgment for nominal damages, but whether Plaintiff is entitled to actual damages, compensatory damages and punitive damages.

#### A. *Actual Damages*

Beginning first with the issue of actual damages, the elements which Plaintiff must prove are: (1) that on or about an approximate date, the Plaintiff was either refused employment or hindered in obtaining such employment; (2) that the refusal or hinderance was caused by the absence or inadequacy of the service letter; (3) that the position Plaintiff had difficulty obtaining was actually open; and (4) the salary rate of that position. *Herberholt,* 625 S.W.2d at 622–623; *Labrier v. Anheuser Ford, Inc.,* 621 S.W.2d 51, 57 (Mo. banc 1981).

Defendant correctly argues that no genuine issue of material fact exists with respect to whether Plaintiff can prove actual damages. First, the evidence shows that Circuit City did ask Plaintiff for a service letter. However, Circuit City employed Plaintiff despite the lack of service letter. Therefore, Plaintiff cannot show that she was refused employment or hindered by the absence of a service letter.

■ Second, with respect to the UMSL placement office, the evidence is undisputed that Plaintiff was not seeking a job with the University of Missouri, but was only utilizing its placement services. It was the placement service which recommended that Plaintiff place a service letter in her file. The fact that an employment service asked for a service letter does not suffice to meet the elements of actual damages. *Kincaid v. Pitney Bowes, Inc.,* 750 S.W.2d 550, 552 (Mo.App. 1988). Furthermore, Plaintiff never applied for any of the full-time or part-time positions posted in the Placement Office at UMSL. Therefore, Plaintiff has clearly failed to provide any evidence that she was denied employment or that her efforts were hindered through the UMSL placement services because she did not have a service letter from Defendant.

Third, with respect to the Missouri Division of Personnel, again the Division of Personnel did not ask to see a service letter but only recommended that she place a copy of a service letter on file with them for use by other agencies. In addition, like the UMSL placement services, the purpose served by the Missouri Division of Personnel case was commensurate with that of an employment agency. As stated above, proving that an employment agency requested a service letter is not sufficient to meet the elements of actual damages. *Kincaid,* 750 S.W.2d at 552.

■ Fourth, the only case in which Plaintiff can possibly establish that the lack of service letter affected her ability to obtain a job is her claim that one of the state agencies did ask her for a copy of a service letter during an interview. In order for Plaintiff to prove actual damages, however, there must be a showing that this potential employer held the service letter against her. *Kling v. Professional Care Center, Inc.,* 735 S.W.2d 168, 169 (Mo.App.1987).

■ Plaintiff need not offer direct evidence to support her theory that she was refused employment with this agency based on her inability to produce a service letter. However, in order to prove her theory by circumstantial evidence, the circumstances must sustain the inference to be drawn and must rise above the level of mere guess and speculation. *Herberholt v. dePaul Community Health Center,* 625 S.W.2d 617, 623 (Mo. banc 1981). In this case, the circumstantial evidence offered by Plaintiff to prove actual damages does not rise above this level.

■ Plaintiff states that she was qualified for the position, that she had two interviews for the position, that the agency requested a service letter and that she did not receive the job. She further states that she believes her failure to produce a service letter was the cause for her rejection of employment with that agency. However, Plaintiff's beliefs are insufficient to prove the elements for actual damages because such beliefs do not rise above the level of mere guess and speculation. *Kling v. Professional Care Center, Inc.,* 735 S.W.2d 168, 169 (Mo.App.1987). Furthermore, the inquiry must focus on what the prospective employer thought about the service letter and not on what Plaintiff thinks. *Kling,* 735 S.W.2d at 169. Here, Plaintiff has only established that she was not able to show to this prospective employer a service letter and thus felt her job search was hindered. Such a subjective feeling does not meet the test. *Jasperson v. Purolator Courier Corp.,* 765 F.2d 736, 742 (8th Cir. 1985). *See also Labrier v. Anheuser Ford, Inc.,* 621 S.W.2d 51, 57 (Mo. banc 1981) (a record devoid of any evidence that any potential employer held the service letter against the employee precludes the award of actual damages).[2]

In light of the fact that Plaintiff has failed to produce any evidence to support her claim that she was hindered in her search for employment or that she was refused employment because she did not have a service letter, Defendant's motion for partial summary judgment on this issue must be granted. No genuine issue of material fact exists

---

**2.** As stated in this Court's discussion of the applicable summary judgment standards, Plaintiff does not have the luxury of waiting until trial to prove these elements. The Supreme Court has mandated that when a Plaintiff cannot prove a requisite element after being challenged by a motion for summary judgment to do so, particularly just weeks before trial, judgment should be entered against that Plaintiff.

concerning the fact that Plaintiff is not entitled to actual damages in the instant cause of action.

### B. Punitive Damages

As stated earlier, it appears that Plaintiff should be entitled to a nominal judgment for the failure of Defendant to comply with the Missouri Service Letter Statute. Moreover, despite the fact that Plaintiff is not entitled to actual damages, nominal damages serve as an adequate basis for an award of punitive damages in this case. *Herberholt v. dePaul Community Health Center*, 625 S.W.2d 617, 624 (Mo. banc 1981). However, Defendant contends in its motion for partial summary judgment that Plaintiff is not entitled to punitive damages.

The law is clear that a failure to respond to a service letter request, by itself, is not sufficient grounds to award punitive damages. *Hills v. McComas Rentals, Inc.*, 779 S.W.2d 297, 299 (Mo.App.1989). *See also Schilligo v. Purolator Courier Corp.*, 824 F.2d 660, 664 (8th Cir.1987). Instead, in addition to the failure to issue a service letter, a plaintiff must prove the presence of either legal or actual malice. *Brooks v. Woodline Motor Freight, Inc.*, 852 F.2d 1061, 1067 (8th Cir.1988). Legal malice exists where a wrongful act is intentionally done without just cause or excuse, whereas actual malice exists when one with a sedate, deliberate mind and formed design injures another. *Herberholt*, 625 S.W.2d at 624. *See also Schilligo*, 824 F.2d at 663.

Here, there is no evidence of either actual or legal malice. The undisputed facts are that Ms. Agrella did not receive Plaintiff's February 11, 1993 service letter request until June 1993. In the meantime, she had received a service letter request from Plaintiff's attorney in May 1993 and promptly responded by sending him correspondence which indicated that she had not received Plaintiff's February 11, 1993 letter and that when she does receive such requests she complies by forwarding to the employee a personnel action report form. She sent Plaintiff a copy of her personnel action report form. When Ms. Agrella received the second correspondence from Plaintiff's attorney in June informing her that she still had not complied because the personnel action report form did not indicate the reasons for Plaintiff's termination, Ms. Agrella again promptly responded with another letter setting forth the reasons for Plaintiff's discharge. The fact that Defendant responded to the request at all is strong evidence of an absence of malice. *Schilligo v. Purolator Courier Corp.*, 824 F.2d 660, 664 (8th Cir. 1987). Furthermore, the fact that a defendant acted in good faith and in the honest belief that its responses to the plaintiff were lawful, precludes liability for punitive damages even though the defendant was mistaken as to the legality of its act. *Comerio v. Beatrice Foods Co.*, 616 F.Supp. 1423, 1426 (E.D.Mo.1985).

In response to Defendant's motion for partial summary judgment with respect to the issue of punitive damages, Plaintiff has failed to present any evidence that would suggest the existence of legal or actual malice.[3] There is no evidence in the record that Defendant intended not to comply with the statute, that Defendant's failure to comply was based on evil motive or that such failure rose to the level of a reckless disregard. *Hils v. McComas Rentals, Inc.*, 779 S.W.2d 297, 299 (Mo.App.1989). Instead, the undisputed facts establish only that Defendant failed to respond within the required forty-five days and that when Defendant did respond, its response was not in compliance with the statute. As stated earlier, those facts, in and of themselves, are insufficient grounds upon which to award punitive damages. Thus, Defendant's motion for partial summary judgment as to the issue of punitive damages will be granted.

### C. Compensatory Damages

Plaintiff alleges that she suffered emotional distress and mental anguish as a result of the failure of Defendant to provide her with a service letter. Defendant moves for the issuance of partial summary judgment on the ground that Plaintiff's purported

**3.** *See* Footnote 2, *supra*.

mental condition is not medically determinable. Specifically, Defendant argues that Plaintiff has failed to provide expert medical testimony to support her claim of emotional distress.

■ Under Missouri law, a plaintiff is not entitled to damages for emotional distress in the absence of expert medical testimony offered to support such a claim. *Glover v. McDonnell Douglas Corp.*, 12 F.3d 845 (8th Cir.1994); *Heller v. Heritage Environmental Services, Inc.*, 835 F.Supp. 1124 (E.D.Mo.1993); *Sullivan v. Curators of University of Missouri*, 808 F.Supp. 1420 (E.D.Mo.1992). While a jury can occasionally consider damages such as embarrassment, humiliation, disgrace and mental suffering without medical proof thereof, this applies only in cases of intentional torts. *Signorino v. National Super Markets*, 782 S.W.2d 100 (Mo.App.1989).[4]

In this case, Plaintiff failed to designate and make available for deposition an expert to establish that Plaintiff suffered from emotional distress in compliance with this Court's case management order. Moreover, in Plaintiff's pre-trial materials filed March 5, 1995, Plaintiff does not identify an expert witness to be called at trial. Without expert medical testimony, Plaintiff is not permitted under Missouri law to pursue her claim for emotional distress and mental anguish. As such, Defendant's motion for partial summary judgment on this issue will be granted.

Defendant has filed a motion pursuant to Federal Rule of Civil Procedure 42(b) in which it requests this Court to enter an order bifurcating the trial as to the issue of punitive damages. In light of this Court's ruling that Plaintiff is not entitled to punitive damages, Defendant's motion to bifurcate is now moot and will be denied accordingly.

Defendant has also filed a motion in limine in which it requests this Court to exclude Plaintiff's claims of emotional distress on the grounds that Plaintiff has failed to identify an expert on this issue. In light of this Court's ruling entering judgment in favor of Defendant on the issue of compensatory damages, Defendant's motion in limine will be denied as moot.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff is granted leave to file out of time her motion for summary judgment dated February 5, 1996. [23]

**IT IS FURTHER ORDERED** that Defendant shall show cause within twenty (20) days of the date of this Order why Plaintiff's motion for summary judgment should not be granted.

**IT IS FURTHER ORDERED** that Defendant's motion to strike Plaintiff's motion for summary judgment is **DENIED**. [24]

**IT IS FURTHER ORDERED** that Defendant's motion for partial summary judgment is **GRANTED**. [16]

**IT IS FURTHER ORDERED** that a separate judgment will be entered this same date in favor of Defendant and against Plaintiff on the issue of actual, punitive and compensatory damages.

**IT IS FURTHER ORDERED** that Defendant's motion to bifurcate will be **DENIED** as moot. [19]

**IT IS FURTHER ORDERED** that Defendant's motion in limine is **DENIED** as moot. [20]

**IT IS FINALLY ORDERED** that the instant cause of action is removed from this Court's trial docket of March 25, 1996 to be re-set, if necessary, at a later time.

---

4. Plaintiff's reliance on *Fust v. Francois*, 913 S.W.2d 38 (Mo.App.1995), is misplaced. In that case, the Missouri Court of Appeals reaffirmed the holding of *Signorino, supra*, by finding that only in intentional tort cases is a jury free to consider mental suffering without medical proof thereof. Although the Court permitted an award for emotional suffering in *Fust* in a malicious prosecution case without medical proof, the case clearly turned on the fact that there was no objection on the part of the defendant to the submission of such damages to the jury despite no medical proof. As such, *Fust* is not controlling here.